JOHN PRALL v. B. S. SAWYER.

[FILED JANUARY 28, 1890.]

The Evidence examined and considered, and *held*, to sustain the verdict.

ERROR to the district court for Valley county. Tried below before HARRISON, J.

*A. S. Moon,* for plaintiff in error.

*A. M. Robbins, contra.*

COBB, CH. J.

This cause is brought on error from the district court of Valley county.

The plaintiff below alleged that in May, 1887, he bargained with the defendant to sell him 219 head of cattle, and to receive in part payment four ponies and two mares at the price of $1,200, and to keep the cattle for thirty days prior to the delivery; that the bay mare "Maggie Mitchell" and the sorrel mare "Queen," in said payment, were represented by defendant before, and at the time of, the purchase as thoroughbred, pedigreed stock; that one was registered, and that he held the authenticated pedigrees of both, taken from the horseman's stock book, as thoroughbred horses, and that he would furnish, immediately upon the consummation of the sale, sufficient proof of the pedigree of the other mare to entitle plaintiff to have her registered as a pure blooded or thoroughbred mare, and by reason thereof they were worth $800 each; that in said bargain and sale the mares were estimated at $500 each, but that plaintiff was ignorant of that class of horses that the mares were so represented to be of, and relied solely upon the

representations of defendant as to their pedigree and value; that his purpose in purchasing them at an exorbitant price was that of breeding thoroughbred horses, which was stated to and understood by defendant; that had said representations been true, the mares would have reasonably been worth, for such purpose, $500 each, but that said representations were false and untrue, and were known to be such by defendant at the times they were so made; that the mares were not of value to exceed $100 each, and by such false and fraudulent representations the plaintiff has been damaged in the sum of $800.

The plaintiff further alleges that the defendant did not receive and take away the cattle bargained for at the expiration of thirty days, but left them until late in the fall season of 1887, and that it was reasonably worth the sum of seventy-five cents per head of 107 head so left to be cared for, amounting to $80.30, which is due and unpaid. The plaintiff asks judgment for $880.30.

The defendant answered, and admitted that in May, 1887, he contracted with plaintiff for 219 head of cattle, to be kept for him for thirty days; that as a part payment he traded to the plaintiff ten head of horses; and denied each and every other allegation of the plaintiff.

The defendant set up that the plaintiff is indebted to him in $210, in this, that at the time of the purchase of the cattle the plaintiff guaranteed that of the 219 head not less than 60 should be two and three-year-old steers, fit for feeding in the fall of 1887, but that there were not to exceed 39 head so fit for feeding, that the remaining 21 were cows, heifers, yearlings, and calves, and that the difference in value was $10 per head less for those delivered than those contracted for, by reason of which the defendant was damaged in $210, for which he asks judgment.

The plaintiff replied and denied every allegation set up in the defendant's answer, except such as admit the truth of his petition.

There was a trial to a jury with findings and a verdict for the plaintiff of $400 damages, upon which judgment was entered for that sum, and $174.25, costs of suit.

The defendant's motion for a new trial being overruled the cause was brought to this court on assignments of error, that the verdict was contrary to law and the evidence, and was excessive, under the influence of passion or prejudice controlling the jury.

· The cause is therefore to be considered solely upon the evidence, no question being presented upon the instructions of the court or any ruling during the trial, nor upon the overruling the motion for a new trial.

The first contention of the plaintiff in error is, that the allegation that he made the representations set up by the plaintiff below was not established before the jury upon a fair preponderance of the evidence, and refers to the language of the fifth instruction of the court: "that a mere fraudulent representation is not actionable; that the plaintiff must not only show by a preponderance of evidence that the representations were made, and were false and fraudulent, but must show affirmatively by a preponderance of evidence that he has been injured thereby, and that he is in some way placed in a worse condition than he would have been had the statements been true."

It will be seen from this instruction that the court adhered to the usual course and theory of instructions to juries that they should find according to the weight and preponderance of evidence, and that it was their duty to keep that principle in view. In a court of review it is always to be presumed that the jury has observed and acted upon that principle, where evidence was submitted to sustain their finding. A court of review will hesitate to put itself in the place of the jury and reweigh the testimony. A patient reading of the voluminous record in this case, in which it is confessed that there are a few inconsistencies, shows that there is sufficient testimony to warrant the find-

ing that the defendant not only represented to the plaintiff as an inducement to trade for the mares described, that they were thoroughbred and pedigreed stock, that one was registered and that he held the evidence upon which the other was entitled to be registered, but that such representations were false and fraudulent, and that the plaintiff was injured thereby. Of the plaintiff's witnesses on the trial, several fixed the value of the mares represented as thoroughbreds not to exceed $250, and while most of them failed to establish their value or that of similar mares regarded as thoroughbred stock and registered or entitled to be registered as such, the witness Linton did fix a valuation in his testimony "at anywhere from $300 to $600 apiece." Taking his lowest estimate of the value of mares such as these were represented to be, $600 for the two, and deducting the value placed upon them as common stock, such as they were, by the other witnesses, $250, leaves damages to the plaintiff on that account of $350. This measure is established, not only by a considerable evidence, but by a fair preponderance of all the evidence in the case.

The plaintiff's second cause of action consists in his care and custody of a portion of the herd of cattle sold to defendant for several months beyond the time agreed upon for their delivery. This service the plaintiff testified was worth seventy-five cents per head of 107 cattle, amounting to $80.30. While there is some conflicting testimony as to the fact of rendering the service, there is none as to the value of it, if performed. There is sufficient evidence, in my opinion, in the plaintiff's testimony and that of the corroborating witness, Sawyer, to have justified the jury in finding for the plaintiff on this cause of action.

The damages incident to the mares, and the charges on the cattle, amounting to $430.30, the jury found for the plaintiff on account of both but $400.

The finding, to my mind, is amply supported by the

evidence, and the judgment of the district court is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.